RUSS, AUGUST & KABAT
Marc A. Fenster, State Bar No. 181067
Email: mfenster@raklaw.com
Andrew D. Weiss, State Bar No. 232974
Email: aweiss@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile:(310) 826-6991

Attorneys for Plaintiff
DEMAND MEDIA, INC.

FILED
CLERK, U.S. DISTRICT COURT

NOV 19 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DEMAND MEDIA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>STRAGENT, LLC, a Texas limited liability company; SEESAW FOUNDATION, a Texas non-profit corporation<br><br>Defendants. | Case No. CV 10 8925 - RGK (SHx)<br><br>**DEMAND MEDIA, INC.'S COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY**<br><br>JURY TRIAL DEMANDED |

Demand Media, Inc. ("DM") brings this action for a declaratory judgment of non-infringement and invalidity against Stragent, LLC ("Stragent") and SeeSaw Foundation ("SeeSaw") as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      DM is a corporation organized and existing under the laws of Delaware with a principal place of business at 1299 Ocean Avenue, Santa Monica, CA 90401.

1

RUSS, AUGUST & KABAT

2.    On information and belief, Stragent is a Texas limited liability company formed for the purpose of asserting patents, having its principal place of business at 211 West Tyler Street, Suite C, Longview, Texas 75601.

3.    On information and belief, SeeSaw is a Texas non-profit corporation with its principal place of business at 1601 W. Fairmont Street, Longview, Texas 75604.

4.    This is an action for Declaratory Relief for which this Court has jurisdiction under Title 35 of the United States Code, as well as under 28 U.S.C. §§ 1331, 1338, 2201, and 2202.  An actual controversy exists between the parties regarding the validity and non-infringement of U.S. Patent No. 6,665,722 (the "'722 patent") because Stragent and SeeSaw's actions have put DM in the position of continuing to sell its social media applications (which applications Stragent and SeeSaw have asserted to infringe the '722 patent) or abandoning the activity that DM believes is proper.  In particular, Stragent and SeeSaw have filed complaints for patent infringement against two of DM's customers of its social media applications:  (1) Fox Broadcasting Company, Inc. and Fox Entertainment Group, Inc. (collectively, "Fox"), in the case styled as *Stragent, LLC, et al. v. Match.com, L.L.C., et al*, Case No. 6:10-CV-226-LED (E.D. Tex.); and (2) Gannett Co. ("Gannett"), in the case styled as *Stragent, LLC, et al. v. Classmates Online, Inc., et al.*, Case No. 6:10-CV-242-LED (E.D. Tex.).  Both Fox and Gannett have been accused of infringing the '722 patent by "making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation [their] website, that infringe one or more claims of the '722 patent."  True and correct copies of the currently operative complaints against Fox and Gannett are attached as Exhibits B and C.

5.    On information and belief, based on Stragent and SeeSaw's claim charts detailing their infringement contentions for Fox and Gannett's websites, the "communication systems" alleged of infringing are, or at least include, the social

2

1   media applications provided by Pluck, a DM company.  Stragent and SeeSaw have

2   asserted that DM's social media applications infringe the '722 patent.  Both Fox

3   and Gannett have tendered indemnity requests to DM based on agreements related

4   to the allegedly infringing social media application products and services.

5       6.     Stragent has initiated at least twelve patent infringement litigations,

6   six of which also include SeeSaw as a plaintiff.  Four of the twelve actions filed by

7   Stragent and/or SeeSaw have asserted infringement of the '722 patent.  Currently,

8   Stragent and SeeSaw have asserted that 54 companies infringe the '722 patent.  On

9   information and belief, Stragent and SeeSaw intend to bring additional actions

10  against other alleged infringers, including against other DM customers as well as

11  DM itself.

12      7.     The DM social media applications and services that Stragent and

13  SeeSaw have accused of infringement in the Fox and Gannett cases are also

14  provided to hundreds of DM customers other than Fox and Gannett.  Based on

15  Stragent and SeeSaw's currently filed lawsuits against DM's customers (Fox and

16  Gannett), as well as its apparent plan to sue all alleged infringers using similar

17  technology, DM has a real and present apprehension that Stragent and SeeSaw will

18  sue additional DM customers and/or DM itself for infringement of the '722 patent

19  based on the manufacture, use, sale or offer of sale of DM's social media

20  applications.

21      8.     This Court has personal jurisdiction over Stragent and SeeSaw

22  pursuant to due process and/or the California Long Arm Statute by virtue of their

23  substantial contacts with the Central District of California and their ability to

24  foresee liability in California as a result of their enforcement efforts against a large

25  number of California companies.  For example, with respect to the '722 patent

26  alone, Stragent and SeeSaw have brought a number of claims against residents of

27  this district, including Fox Broadcasting Company, Inc., Fox Entertainment Group,

28  Inc., EHarmony, Inc., Sony Computer Entertainment America Inc, United Online,

RUSS, AUGUST & KABAT

3

Inc., MyLife.com, Inc., MySpace, Inc., LG Electronics MobileComm U.S.A., Inc., Kyocera Communications, Inc., Kyocera Wireless Corporation and Kyocera International, Inc.   Stragent has also brought actions for infringement of the '722 patent against other California companies such as Skype, Inc., Twitter, Inc., Plaxo, Inc., Meebo, Inc., Linden Research, Inc., Palm, Inc., Google, Inc. and Yahoo! Inc. Furthermore, on information and belief, Stragent and SeeSaw have entered into license agreements related to the '722 patent as well as other patents with other forum residents that apply California law.   The claims brought in this action by DM therefore arise out of or relate to Stragent and SeeSaw's purposeful acts of patent enforcement against residents of this forum, including Fox Broadcasting Company, Inc. and Fox Entertainment Group, Inc.

9. Additionally, Stragent operates a publicly-available website at www.stragent.com that markets its service and invites patent owners, including in the Central District of California, to submit patents and/or patent applications to Stragent for evaluation.   Jurisdiction over Stragent and SeeSaw is therefore reasonable and fair in this district.

10. Venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1400(b).   As discussed above, Stragent and SeeSaw are subject to personal jurisdiction in this District and venue is therefore proper.

11. On information and belief, SeeSaw is owner by assignment of the '722 patent.  According to the face of the patent, the '722 patent is entitled "Store-And-Forward Packet Radio System And Method" and issued on December 16, 2003.  A true and correct copy of the '722 patent is attached as Exhibit A.

12. On information and belief, Stragent is the exclusive licensee of the '722 patent.

DEMAND MEDIA, INC.'S COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGMENT AND INVALIDITY

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

## FIRST CLAIM
### (Declaratory Judgment of Non-Infringement of the '722 patent)

13.    DM incorporates by reference the allegations set forth in Paragraphs 1-12 above.

14.    By the filing of its complaints against Fox and Gannet, Stragent and SeeSaw have asserted claims against products and services provided by DM for the alleged infringement of the '722 patent.  By their other complaints against a large number of other alleged infringers, Stragent and SeeSaw have demonstrated a pattern and practice of broadly asserting the '722 patent.  DM expects that its hundreds of remaining customers as well as itself are likely to be sued by Stragent and SeeSaw for alleged infringement of the '722 patent.

15.    DM has not and does not make, use, import, sell, or offer to sell any product, process or service that infringes any valid and/or enforceable claim of the '722 patent.

16.    DM has neither contributed to nor induced another party's infringement of the '722 patent.

17.    An actual controversy has arisen between DM and Stragent and SeeSaw concerning the alleged infringement of the '722 patent.

18.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., DM is entitled to judgment from this Court finding that the '722 patent is not infringed, directly or indirectly, by DM, or by any DM product, process or service.

## SECOND CLAIM
### (Declaratory Judgment of Invalidity of the '722 patent)

19.    DM incorporates by reference the allegations set forth in Paragraphs 1-18 above.

20.    The claims of the '722 patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, 133, 200 *et seq.*, and 301 *et seq.*

5

21.    An actual controversy has arisen between DM and Stragent and SeeSaw concerning the alleged validity of the '722 patent.

22.    As a result, DM is entitled to judgment from this Court finding that the claims of the '722 patent are invalid pursuant to 35 U.S.C. §§ 101 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, DM prays for relief as follows:

A.    For a Declaratory Judgment that the '722 patent, and each and every claim thereof, is not infringed, either directly or indirectly, by DM, by any DM product, process or service, or by DM's customers use of any DM product, process or service;

B.    For a Declaratory Judgment that the '722 patent is invalid;

C.    That DM be awarded such other relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

DM, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: November 19, 2010                **RUSS AUGUST & KABAT**

By: _Marc A. Fenster_
                                        Marc A. Fenster

Attorneys for Plaintiff
DEMAND MEDIA, INC.

DEMAND MEDIA, INC.'S COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY

RUSS, AUGUST & KABAT

# Exhibit A



US006665722B1

(12) **United States Patent**    (10) Patent No.:    **US 6,665,722 B1**
Elliott                          (45) Date of Patent:       **Dec. 16, 2003**

(54) **STORE-AND-FORWARD PACKET RADIO SYSTEM AND METHOD**

(75) Inventor:  **Brig Barnum Elliott**, Arlington, MA (US)

(73) Assignee: **BBNT Solutions LLC**, Cambridge, MA (US)

( * ) Notice:  Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 784 days.

(21) Appl. No.: **09/583,352**

(22) Filed:  **May 31, 2000**

(51) Int. Cl.[7] ........................ G06F 15/16; H04L 12/28
(52) U.S. Cl. ...................... 709/227; 709/245; 370/389; 370/392; 370/432; 370/471
(58) Field of Search .............................. 709/227, 245; 370/389, 392, 432, 471

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,509,000 A | * | 4/1996 | Oberlander | 370/409 |
| 5,970,059 A | * | 10/1999 | Ahopelto et al. | 370/338 |
| 5,978,386 A | * | 11/1999 | Hamalainen et al. | 370/466 |
| 5,983,090 A | * | 11/1999 | Aoki | 455/403 |
| 6,018,522 A | | 1/2000 | Schultz | 370/431 |
| 6,034,970 A | * | 3/2000 | Levac et al. | 370/466 |
| 6,040,783 A | | 3/2000 | Houvener et al. | 340/825.3t |
| 6,047,194 A | | 4/2000 | Andersson | 455/466 |
| 6,230,012 B1 | * | 5/2001 | Willkie et al. | 455/435.1 |

* cited by examiner

*Primary Examiner*—Krisna Lim
(74) *Attorney, Agent, or Firm*—Leonard Charles Suchyta; James K. Weixel

(57)           **ABSTRACT**

A communication device sends a message to one or more recipients in a communications network. The communication device retrieves device identifiers from a list of device identifiers stored in a memory of the device. The device identifiers include audio, pictorial and/or video data. The communication device presents the audio, pictorial and/or video data to a user of the device in auditory or visual form (1310) and then receives user input in response to the presented data (1325). The communication device designates a second communication device as a destination for the message based on the user input (1330). The communication device then sends the message to the second communication device.

48 Claims, 17 Drawing Sheets



**U.S. Patent**          Dec. 16, 2003          Sheet 1 of 17          US 6,665,722 B1



**FIG. 1**                    PRIOR ART



**FIG. 2**          PRIOR ART

**U.S. Patent**          Dec. 16, 2003          Sheet 2 of 17          US 6,665,722 B1



**FIG. 3**



**FIG. 4**

**U.S. Patent**     Dec. 16, 2003     Sheet 3 of 17     US 6,665,722 B1



FIG. 5



FIG. 6

Case 2:10-cv-08925-RGK -SH   Document 1   Filed 11/19/10   Page 12 of 62   Page ID #:13

Case 6:10-cv-00226   Document 1-2   Filed 04/29/10   Page 6 of 28



FIG. 7



**FIG. 8**



**FIG. 9**

**U.S. Patent**          Dec. 16, 2003          Sheet 6 of 17          US 6,665,722 B1



FIG. 10

**U.S. Patent**     Dec. 16, 2003     Sheet 7 of 17     US 6,665,722 B1



INTRODUCTION

**FIG. 11**



**FIG. 12**

**U.S. Patent**          Dec. 16, 2003          Sheet 9 of 17          US 6,665,722 B1



FIG. 13

**U.S. Patent**          Dec. 16, 2003          Sheet 10 of 17          US 6,665,722 B1



FIG. 14

**U.S. Patent**     Dec. 16, 2003     Sheet 11 of 17     US 6,665,722 B1



SENDING A
MESSAGE

START

1505 — SENDING DEVICE SENDS PROBE MESSAGE TO IDENTIFIED DEVICE(S)

SENDING DEVICE WAITS A PERIOD OF TIME — 1515

1510 — DESTINATION DEVICE(S) RESPONDS WITH AUTHORIZATION MESSAGE(S)?

No

Yes

1520 — SENDING DEVICE FORMS WIRELESS LINK WITH RESPONDING DESTINATION DEVICE

1525 — SENDING DEVICE TRANSMITS OUTGOING_MSG_#x TO DESTINATION DEVICE(S)

1530 — POSITIVE ACKNOWLEDGMENT RECEIVED FROM DESTINATION DEVICE?

No

Yes

4

**FIG. 15**

**U.S. Patent**      Dec. 16, 2003      Sheet 12 of 17      US 6,665,722 B1

SENDING A
MESSAGE



FIG. 16

**U.S. Patent**        Dec. 16, 2003        Sheet 13 of 17        US 6,665,722 B1



**FIG. 17**

**U.S. Patent**          Dec. 16, 2003          Sheet 14 of 17          US 6,665,722 B1



FIG. 18



**FIG. 19**

RE-INITIALIZATION



FIG. 20

U.S. Patent          Dec. 16, 2003          Sheet 17 of 17          US 6,665,722 B1

RE-INITIALIZATION



FIG. 21

US 6,665,722 B1

## 1

### STORE-AND-FORWARD PACKET RADIO SYSTEM AND METHOD

### FIELD OF THE INVENTION

The present invention relates generally to packet radio networks and, more particularly, to systems and methods for providing improved user-friendly packet delivery techniques in mobile packet radio networks.

### BACKGROUND OF THE INVENTION

Wireless data communication is often required in an environment where communications infrastructure, such as base stations or a wired backbone network, does not exist or is uneconomical or impractical to use. For example, in military or emergency environments, adequate infrastructure often does not exist in necessary locations and constructing such an infrastructure would be either impractical or uneconomical for the short-term use that is often required. Mobile wireless networks, which permit communication between wireless devices in the network over an air interface link without routing packets through any portion of a conventional cellular network, such as the wired backbone network, base station controllers, or base stations, have therefore been developed to provide wireless data communications in such environments.

Point-to-point communication in a mobile wireless network suffers from a number of disadvantages. One disadvantage is the limited transmission range associated with each wireless device in the network. Each wireless device in the network is limited in the distance over which it can reliably transmit, with transmission ranges of between a few feet and hundreds of feet being typical. Therefore, it is often the case that a source wireless device is out of transmission range with a destination wireless device with which the source device desires to communicate. The source wireless device user, therefore, has to wait until the destination wireless device comes within transmission range before attempting to communicate, or re-transmit the data at a later time when no acknowledgment is received from the destination device indicating that the device received the data from the source device.

FIG. 1 is a diagram of a two-node network illustrating this problem. The illustrative network includes a source device 115 and a destination device 120. As shown, each device (115, 120) has an effective transmission range delineated by dotted lines 105 and 110, respectively. Since the transmission range of source device 115 (dotted line 105) does not encompass destination device 120, device 115 cannot communicate with node 120. Device 115 must, therefore, move in closer proximity to device 120 to be able to transmit data to device 120. FIG. 2 illustrates the situation where source device 115 and destination device 120 have moved within transmission range of one another. As shown, each device's (115, 120) effective transmission range (delineated by dotted lines 105 and 110, respectively) encompasses the other device. Devices 115 and 120, therefore, can communicate with each other.

An additional disadvantage with point-to-point communication in a mobile wireless network is that a source device may be unable to communicate with a destination device for a given period of time because the destination wireless device is either turned off or in an off-line status. In this case, the user of the source device must wait until the destination wireless returns to an on-line state, or turns on, before attempting once again to transmit data.

## 2

Therefore, there exists a need for a system and method that enables data communication between devices in a mobile wireless network, where the user of a sending device need only indicate data that is to be transmitted and a destination node to which the data is to be transmitted, and the sending device automatically attempts transmission of the data to the destination device, including re-transmission attempts if the destination device is out of transmission range, turned off, or off-line.

### SUMMARY OF THE INVENTION

Systems and methods consistent with the present invention address this need by providing a wireless device that may store, and then forward, messages to destination devices when the destination devices come within transmission range of the wireless device.

In accordance with the purpose of the invention as embodied and broadly described herein, a method for introducing a first communication device to a second communication device in a communication network includes transmitting a message from the first communication device. The message includes presentation data that further includes at least one of audio, pictorial and video data representing an identity of the first communication device. The second communication device receives the message and extracts the presentation data from the message. The second communication device presents the presentation data to a user of the second communication device in auditory or visual form and receives user input in response to the presentation. The second communication device then stores the presentation data in memory in the second communication device based on the user input.

In another implementation consistent with the present invention, a method of providing an identifier for a communication device includes inputting at least one of auditory, pictorial and video information into the communication device and converting the auditory, pictorial and video information into device identifier data. The method further includes storing the device identifier data in a memory of said communication device.

In a further implementation consistent with the present invention, a method of sending a message to one or more recipients in a communications network includes retrieving device identifiers from a list of device identifiers stored in a memory of a first communication device. The device identifiers include at least one of audio, pictorial and video data. The method further includes presenting the audio, pictorial and video data to a user of the first communication device in auditory or visual form and receiving user input in response to said presentation. The method additionally includes designating a second communication device as a destination for the message based on said user input and sending the message to the second communication device.

### BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying drawings, which are incorporated in and constitute a part of this specification, illustrate an embodiment of the invention and, together with the description, explain the invention. In the drawings,

FIG. 1 illustrates an exemplary network in which two wireless devices are located outside of one another's transmission ranges;

FIG. 2 illustrates an exemplary network in which two wireless devices have relocated within one another's transmission ranges;

US 6,665,722 B1

3

FIG. 3 illustrates an exemplary wireless device consistent with the present invention;

FIG. 4 illustrates an exemplary database consistent with the present invention;

FIG. 5 illustrates a list of exemplary device identifiers consistent with the present invention;

FIG. 6 illustrates a list of exemplary messages received at a wireless device consistent with the present invention;

FIG. 7 illustrates a list of exemplary outgoing messages that are to be transmitted from a wireless device consistent with the present invention;

FIG. 8 illustrates a first exemplary user interface consistent with the present invention;

FIG. 9 illustrates a second exemplary user interface consistent with the present invention;

FIG. 10 illustrates an exemplary flow diagram of device initialization processing consistent with the present invention;

FIGS. 11–12 illustrate exemplary flow diagrams of device introduction processing consistent with the present invention;

FIGS. 13–14 illustrate exemplary flow diagrams of device processing for recording a message consistent with the present invention;

FIGS. 15–16 illustrate exemplary flow diagrams of device processing for sending a message consistent with the present invention;

FIGS. 17–19 illustrate exemplary flow diagrams of device processing for receiving a message consistent with the present invention; and

FIGS. 20–21 illustrate exemplary flow diagrams of device processing for reinitialization consistent with the present invention.

DETAILED DESCRIPTION

The following detailed description of the invention refers to the accompanying drawings. The same reference numbers in different drawings identify the same or similar elements. Also, the following detailed description does not limit the invention. Instead, the scope of the invention is defined by the appended claims.

Systems and methods consistent with the present invention improve the delivery of messages in wireless networks by permitting the temporary storage of messages in a sending device followed by the transmission or re-transmission of the messages when the destination devices come within the transmission range of the sending device.

EXEMPLARY DEVICE

FIG. 3 illustrates an exemplary wireless data communications device 300 in which a system and method, consistent with the present invention, for storing and forwarding messages can be implemented. Exemplary wireless device 300 may comprise a cellular phone, a personal or portable computer, a personal digital assistant (PDA) or the like. Wireless device 300 includes an antenna 305, a wireless transceiver 310, an output device 315, an input device 320, a processing unit 325, a Random Access Memory (RAM) 330, a Read Only Memory (ROM) 335, a bus 340, a vibration transducer 345, a digital-to-analog (D/A) converter 350, an analog-to-digital (A/D) converter 355, a speaker 360 and a microphone 365.

Antenna 305 may include a conventional antenna that facilitates reception and transmission of data packets by

4

wireless transceiver 310. Wireless transceiver 310 may include transceiver circuitry well known to one skilled in the art that can be tuned to multiple channels reserved for transmitting data in a wireless network (i.e., a channel can be a frequency, code, or time division of a physical radio frequency).

Input device 320 permits entry of data into wireless device 300 and includes a user interface (not shown). Output device 315 permits the output of data in video, audio, or hard copy format. Processing unit 325 performs all data processing functions for inputting, outputting, and processing of data. RAM 330 provides semi-permanent working storage of data and instructions for use by processing unit 325. ROM 335 provides permanent or semipermanent storage of data and instructions for use by processing unit 325. RAM 330 and ROM 335 may include large-capacity storage devices, such as a magnetic and/or optical recording medium and its corresponding drive. Bus 340 interconnects the various components of the device 300 to permit the components to communicate with one another.

Vibration transducer 345 includes a conventional mechanism for vibrating device 300 in response to command signals from processing unit 325. Digital-to-analog (D/A) converter 350 includes conventional circuitry for converting digital audio signals from digital to analog signal form. Analog-to-digital (A/D) converter 355 includes conventional circuitry for converting analog audio input signals from microphone 365 to digital signal form. Speaker 360 includes a conventional mechanism for providing an auditory output of the D/A converted audio signals. Microphone 365 includes a conventional mechanism for converting auditory input into analog signals.

EXEMPLARY DATABASE

FIG. 4 illustrates an exemplary database 400, consistent with the present invention, that may be stored within RAM 330 of device 300. Database 400 may include device identifiers MY_UNIQUE_ID 405 and MY_ID 410 for device 300, a list of device identifiers 415 for wireless devices other than device 300 consisting of FRIEND_ID_#1 through FRIEND_ID_#N, a list of messages 420 received by device 300 consisting of RECEIVED_MSG_#1 through RECEIVED_MSG$_{13}$ #N, a list of outgoing messages 425 that are queued for transmission in RAM 330 of device 300 consisting of OUTGOING_MSG_#1 through OUTGOING_MSG_#N, and a list 430 of speech data SPEECH_DATA_#1 through SPEECH_DATA_#N.

Device identifier MY_UNIQUE_ID 405 may include a global identifier that uniquely identifies device 300 and may consist of a unique series of bytes that are machine-readable. Audio identifier MY_ID 410 may include a recorded audio message that provides a human-understandable auditory identification for device 300. Each data block from list 430 may include speech messages SPEECH_DATA_#1 through SPEECH_DATA_#N that are associated with the operation of device 300. For example, when a message is received from another device, device 300 may play selected speech data from database 400, containing an auditory message "A message has been received," to a user of the device 300.

FIG. 5 further illustrates list 415 which may include device identifiers for other devices with which device 300 communicates. List 415 consists of device identifiers FRIEND_ID_#1 505 through FRIEND_ID_#N 510. Each device identifier FRIEND_ID_#1 505 through FRIEND_ID_#N 510 may include unique global identifi-

US 6,665,722 B1

**5**

ers MY_UNIQUE_ID_#1 515 through MY_UNIQUE_ID_#N 525 and audio identifiers MY_ID_#1 520 through MY_ID_#N 530, respectively. Global identifiers MY_UNIQUE_ID_#1 515 through MY_UNIQUE_ID_#N 525 identify devices other than device 300. Audio identifiers MY_ID_#1 through MY_ID_#N comprise recorded audio messages that can provide human-understandable auditory identifications for the devices identified by the global identifiers.

FIG. 6 illustrates received message list 420 includes messages that have been received from other devices at device 300 and stored in RAM 330. Each individual message, RECEIVED_MSG_#1 605 through RECEIVED_MSG_#N 610 may consist of unique global identifiers MY_UNIQUE_ID_#1 515 through MY_UNIQUE_ID_#N 525 (described above), audio identifiers MY_ID_#1 520 through MY_ID_#N 530 (described above), and message data MESSAGE_DATA_#1 615 through MESSAGE_DATA_#N 620, respectively. Each message MESSAGE_DATA_#1 615 through MESSAGE_DATA_#N 620, may consist of audio, video, or pictorial data which includes the message from a device other than device 300.

FIG. 7 illustrates outgoing message list 425 that include messages that are waiting in queue in RAM 330 for transmission to a selected destination device(s). Each individual message, OUTGOING_MSG_#1 705 through OUTGOING_MSG_#N 710, may consist of the global device identifier MY_UNIQUE_ID 405 and audio identifier MY_ID 410 of device 300, indicating device 300 as the message source. Each individual message from list 425 additionally may consist of unique global identifiers MY_UNIQUE_ID_#1 515 through MY_UNIQUE_ID_#N 525 (described above) and audio identifiers MY_ID_#1 520 through MY_ID_#N 530 (described above) indicating the devices to which each message is to be sent. Each individual message from list 425 further may further consist of audio, video, or pictorial message data MESSAGE_DATA_#1 615 through MESSAGE_DATA_#N 620 (described above) for each respective device to which device 300 is sending data. Furthermore, each outgoing message has a field 715 stored in database 400 that identifies when a message has been successfully delivered to an appropriate device.

### EXEMPLARY USER INTERFACES

FIG. 8 illustrates a first exemplary user interface 800 for input device 320 of device 300. User interface 800 may consist of a number of buttons disposed on the exterior package 845 of device 300 that can be selected for control of the operation of the device. These buttons include a RECORD button 805, a PLAY button 810, a SEND button 815, a NEXT button 820, a TO button 825, a DISCARD button 830, an ID button 835, and a MSG button 840.

RECORD button 805 initiates an audio recording function in which auditory input to microphone 365 is A/D converted and stored in RAM 335. Selection of the PLAY button 810 initiates a playback function whereby audio data stored in RAM 335 is retrieved, D/A converted, and output through speaker 360. SEND 815 button, when selected, indicates that a designated message is to be transmitted to a particular destination wireless device. The NEXT button 820, when selected, indicates that the user wishes to proceed to a next message or identifier in a list of messages or identifiers. Selection of the TO button 825 indicates the selection of an identifier (FRIEND_ID) in device identifier

**6**

list 415. DISCARD button 830, when selected, discards a received message (RECEIVED_MSG) in list 420 or a FRIEND_ID in the device identifier list 415. Selection of the ID button 835 indicates that subsequent user input to device 300 refers to received message list 420 or a device identifier list 415. MSG button 840, when depressed, indicates that subsequent user input to device 300 refers to outgoing message list 425.

FIG. 9 illustrates a second exemplary user interface 900 of input device 320 in which input device 320 and output device 315 may both reside within a video display 905. Interface 900 includes a graphical user interface displayed upon video display 905 and includes graphical display "buttons" (shown as 805–840) for selecting the various functions described above with respect to FIG. 8. The graphical display "buttons" can be selected using a movable cursor, a touch sensitive display screen or the like. Additionally, user interface 900 contains data field displays (910, 915, 920, 925) that can be scrolled through, using a specified "button," to show the complete contents of data contained in lists 415, 420, 425, and 430. The graphical display buttons can also be used to select (highlight 930) a data item.

### EXEMPLARY PROCESSING FOR INITIALIZATION

FIG. 10 is a flowchart of system processing, consistent with the present invention, for initializing device 300. For purposes of providing a specific example in the following flow charts, assume that "Sally" operates a sending device and "Jim" operates a destination device, with both sending and destination devices being substantially similar to device 300.

Initialization consists of device processing for permitting a user of device 300 to enter an auditory word or phrase that can be used as the user device's audio identifier MY_ID 410 when communicating with other devices. Device 300 first determines if the ID button 830 has been selected [step 1005]. If the ID button has been selected, device 300 next determines if the RECORD button 805 has also been selected [step 1010]. If the RECORD button 805 has been selected, then auditory input received at microphone 365 is analog-to-digital converted by A/D converter 355 and transferred, via processing unit 325, to RAM 330 for storage as MY_ID 410 [step 1015]. RECORD button 805 can be de-selected to end the recording process [step 1020].

Thus, if Sally or Jim desire to initialize their devices, each selects the ID function on their device and then selects the RECORD function. Sally and Jim then speak identifier phrases, such as "Sally" or "Jim" into microphone 365. After speaking these phrases, Sally and Jim de-select the RECORD function on their respective devices. Each of Sally and Jim's wireless devices respectively store audio identifiers MY_ID 410 in memory.

### EXEMPLARY PROCESSING FOR INTRODUCTIONS

FIGS. 11–12 are flowcharts of system processing, consistent with the present invention, in which two wireless devices, such as Sally's and Jim's devices, are "introduced" to one another using a two-way "handshake" protocol. Before initiation of the "handshake" protocol, the two wireless devices must first be brought within transmission range of one another. Once the devices are within transmission range, a sending device determines if the device's ID button 835 has been selected [step 1105] (FIG. 11). If the ID

US 6,665,722 B1

7

function 835 has been selected, the sending device next determines if the SEND button 815 has also been selected [step 1110]. Sally may, thus, initiate the introduction of her device with Jim's device by selecting the ID function 835 and SEND function 815.

Once the SEND button 815 has been selected, the sending device transmits its MY_UNIQUE_ID 405, MY_ID 410 (e.g., auditory phrase "Sally"), and an indication that the transmission is an identification message [step 1115]. When the destination device receives the identification message from the sending device [step 1120], the destination device alerts the user of the destination device of the receipt of the message [step 1125]. This alert can include an audible message, such as a chime or bell sound, and/or a vibration of the device using vibration transducer 345.

After alerting the user, the destination device determines if the PLAY button 810 has been selected [step 1205] (FIG. 12). If so, the destination device retrieves speech data SPEECH_DATA_#x from database 400 and outputs the speech data, and then the sending device's audio identifier MY_ID 410, to A/D converter 350 and speaker 360 [step 1210]. SPEECH_DATA_#x may consist of an auditory phrase such as "Making friends with . . . ". In accordance with steps 1205–1210, Jim may thus select the PLAY function 810 in response to an alert message from his device and hear the auditory messages "Making friends with . . ." and "Sally" corresponding to SPEECH_DATA_#x and the sending device's MY_ID 410.

After listening to the sending device's MY_ID 410 (e.g., phrase "Sally"), the user of the destination device then may determine whether or not to accept the sending device as a "friend." If the user selects the DISCARD button 835 [step 1215], then the destination device removes from RAM 330 the MY_UNIQUE_ID 405 and MY_ID 410 data received from the sending device [step 1225]. If, however, the DIS-CARD button 835 is not selected, the sending device's MY_UNIQUE_ID 405 and MY_ID 410 are stored in list 415 of the destination device's ROM 335 as MY_UNIQUE_ID_#x and MY_ID_#x, respectively [step 1220]. Therefore, after hearing the phrases "Making friends with . . ." and "Sally," Jim may accept Sally as a friend by neglecting to select the DISCARD function 835.

To complete the "introduction" process, the destination device also performs steps 1105 (FIG. 11) through 1230 (FIG. 12) either simultaneously with, or after, the sending device. After completion of these steps by both devices, the sending and destination devices complete the "introduction" process when the ID button 835 is de-selected at both devices [step 1230]. Sally and Jim may, thus, complete the "introduction" process by de-selecting the ID buttons 835. Both Sally's device and Jim's device now retain the MY_UNIQUE_ID 405 and MY_ID 410 of each other's devices in memory.

EXEMPLARY PROCESSING FOR RECORDING A MESSAGE

FIGS. 13–14 are flowcharts of system processing, consistent with the present invention, in which wireless device 300 records a message. For purposes of providing a specific example, assume that Sally wishes to send a message to Jim, with whom she has previously introduced herself (described above) and that Jim's audio identifier MY_ID is the first identifier stored in list 415 (e.g., MY_ID_#1).

To record a message, device 300 first determines if the MSG function 840 has been selected [step 1305] (FIG. 13). Sally desires to send a message to Jim, therefore, she selects

8

the MSG function 840. Device 300 then retrieves the currently indexed (e.g., index=x) audio identifier (MY_ID_#x) from list 415 and outputs the identifier to D/A converter 350 and speaker 360 [step 1310]. Sally's device retrieves Jim's identifier MY_ID_#1 from list 415 and plays the identifier. Sally hears the phrase "Jim".

Device 300 then determines if the NEXT function has been selected [step 1320]. If so, device 300 increments index x (i.e., x=x+1) [step 1315] and returns to step 1310. In the case of Jim and Sally, Jim is the first identifier in list 415 and Sally, therefore, does not need to select the NEXT function 820. If the NEXT function 820 has not been selected, then device 300 determines if the TO function 825 has been selected [step 1325]. If so, device 300 stores the currently indexed MY_UNIQUE_ID_#x in an outgoing message [step 1330]. Since Sally wishes to send a message to Jim, whose identifier MY_ID_#1 is currently indexed, Sally selects the TO function 825.

Device 300 then determines if the NEXT function 820 has again been selected [step 1335]. If so, device 300 increments index x (i.e., x=x+1) and returns to step 1310 to permit the user to send a message concurrently to two or more devices. In the example, Sally wishes to send a message only to Jim, therefore, Sally does not select the NEXT function 820. If the NEXT function is not selected, device 300 determines if the RECORD function 805 has been selected [step 1340]. If so, auditory input received at microphone 365 is analog-to-digital converted by A/D converter 355 and transferred, via processing unit 325, to RAM 330 for storage as MESSAGE_DATA_#x [1345]. Device 300 ends the recording process after de-selection of the RECORD function 805 [step 1350]. To record a message for Jim, Sally selects the RECORD function 805, speaks into microphone 365, and de-selects the RECORD function 805 when she has finished.

Device 300 next determines if the PLAY function 810 has been selected [step 1405] (FIG. 14). If Sally wishes to hear the message that she has recorded, she selects the PLAY function 810. If the PLAY function 810 is selected, device 300 plays recorded message MESSAGE_DATA_#x [step 1410]. Once playback of recorded message MESSAGE_DATA_#x completes, or the PLAY function 810 is de-selected [step 1415], device 300 determines if the RECORD function 805 is selected [step 1420]. If so, processing returns to step 1345 (FIG. 13) for re-recording of message MESSAGE_DATA_#x. In the example, if Sally chooses not to re-record the message after hearing her recorded message, she does not select the RECORD function 805. If the RECORD function 805 is not selected, device 300 determines if the SEND function 815 has been selected [step 1425]. If so, device 300 queues MESSAGE_DATA_#x in RAM 330 for subsequent transmission [step 1430]. Sally's message to Jim, therefore, is queued as OUTGOING_MSG_#x in database 400.

The exemplary processing in the flowcharts of FIGS. 13–14 illustrates the recording of audio input by a device user for inclusion in a message. One skilled in the art will appreciate, however, that this processing can be modified to include user input such as video or pictorial data. Such user input can further include handwritten pictures or messages using a digital stylus or "tablet."

EXEMPLARY PROCESSING FOR SENDING A MESSAGE

FIGS. 15–16 are flowcharts of system processing, consistent with the present invention, in which device 300

US 6,665,722 B1

**9**

transmits a message queued in RAM 330 to a destination device. As described above, Sally's message to Jim has been queued as OUTGOING_MSG_#x in database 400. To initiate transmission of an outgoing message, the sending device first sends a probe message to the identified device(s) [step 1505] (FIG. 15). The probe message may include a request to send data to the destination device(s). The sending device then determines if the destination device(s) responds with an authorization message(s) [step 1510]. The authorization message authorizes the sending device to send the data to the destination device. If the destination device does not respond with authorization message(s), the sending device waits a configurable period of time before sending another probe message [step 1515]. The configurable period of time may be preset by the manufacturer or set by the device user. If the destination device(s) does respond with an authorization message(s), then the sending device 300 establishes a link-layer wireless connection with the responding device using conventional mechanisms [step 1520].

In the example, Sally's device transmits a probe message to Jim's device, which responds with an authorization message. In response to receipt of the authorization message, Sally's device establishes a link-layer wireless connection with Jim's device.

After establishing the wireless connection, the sending device 300 transmits an outgoing message (OUTGOING_MSG_#x) including MY_UNIQUE_ID 405, MY_ID 410, and message data MESSAGE_DATA_#x [step 1525]. Sally's device would therefore transmit the outgoing message (OUTGOING_MSG_#x) queued in the memory of the device.

After transmission of the message, the sending device awaits receipt of a positive acknowledgment from the destination device, indicating that the destination device successfully received the message [step 1530]. Once received, the sending device marks (field 715 in database 400) the transmitted message as delivered [step 1605] (FIG. 16). The sending device then may optionally delete the transmitted message from database 400 [step 1610]. In the example, Sally's device awaits, after transmitting OUTGOING_MSG_#x, receipt of the positive acknowledgment from Jim's device. When the acknowledgment is received, Sally's device marks the transmitted message as delivered in field 715 of database 400.

EXEMPLARY PROCESSING FOR RECEIVING
A MESSAGE

FIGS. 17–19 are flowcharts of system processing, consistent with the present invention, for receiving a message at a destination device. The destination device receives a probe message from the sending device indicating that the sending device wishes to transmit a message to the destination device [step 1705] (FIG. 17). The destination device then compares the MY_UNIQUE_ID contained in the probe message from the sending device with the identifiers contained in the destination device's list 415 [step 1710]. If the sending device's MY_UNIQUE_ID matches an identifier within list 415 [step 1715], then the destination device responds with an authorization message to the sending device [step 1735]. If no match is found, the destination device responds with a non-authorization message to the sending device [step 1720]. The non-authorization message indicates that the destination device will not accept a message from the sending device.

In the example, Jim's device receives a probe message from Sally's device. Since Jim and Sally have previously

**10**

been introduced, the Sally's MY_UNIQUE_ID contained in the probe message matches an identifier previously stored in list 415. Jim's device therefore responds with an authorization message.

Optionally, the destination device may respond with an authorization message even if the sending device's MY_UNIQUE_ID does not match any identifiers in the destination device's list 415 [step 1725]. This may be advantageous in a multi-hop wireless network where point-to-point connectivity between a sending device and a destination device may be impracticable. Therefore, in such a wireless network, each device in the network may route messages, hop by hop, to intended destination devices. To forward messages intended for other wireless devices, the user of the destination may initiate a "forwarding" mode. If the "forwarding" mode has been initiated, the destination device receives a message from the sending device in response to the authorization message [step 1730] and then forwards the received message on to the intended destination device [step 1805] (FIG. 18). In the example, assuming that Jim's device receives a message from a device used by Bob, and the message is intended for Henry, Jim's device may forward the message on to Henry's device.

Returning to step 1715, the destination device determines if the sending device's MY_UNIQUE_ID matches an identifier within list 415. If so, the destination device responds with an authorization message to the sending device [step 1735]. In response to the authorization message, the destination device 300 receives a message from the sending device [step 1740]. The destination device alerts the device user that a message was received [step 1810] (FIG. 18). The destination device then determines if the PLAY button 810 has been selected [step 1815]. If so, the destination device plays the MY_ID_#x and MESSAGE_DATA_#x contained in the message received from the sending device (RECEIVED_MSG_#x) [step 1820]. In the example, Jim's device receives the message sent by Sally and then alerts Jim that the message has been received. In response to the alert, Jim selects the PLAY function 810 and listens to Sally's MY_ID audio identifier and Sally's message MESSAGE_DATA_#x.

The destination device user then may have the following options: 1) maintain the message in memory; 2) delete the message; 3) reply to the message; or 4) forward the message on to other devices. The destination device determines if the MSG button 840 has been selected indicating that the user desires to forward the message on to another device(s) [step 1830]. If not, then the destination device determines if the RECORD button 805 has been selected indicating that the user desires to reply to the received message [step 1835]. If the RECORD button 805 has been selected, then the destination device permits the user to reply to the message by performing message recording processing beginning at step 1325 of FIG. 13. However, if the RECORD button 805 has not been selected, then the destination device determines if the DISCARD function 830 has been selected [step 1840] indicating that the user desires to delete the received message. If the DISCARD function 830 has not been selected, the message receiving processing is completed, with the device retaining the received message in memory. If the DISCARD function 830 has been selected, the destination device deletes the sending device's RECEIVED_MSG_#x from memory [step 1845].

If, at step 1830, the destination device determines that the MSG button 840 has been selected, then the destination device permits the user to forward the message to other devices by continuing processing at step 1850. At this step,

US 6,665,722 B1

11

the destination device determines if the TO function 825 has been selected. If so, the destination device adds the selected FRIEND_ID as a destination identifier in an outgoing message [step 1905] (FIG. 19).

The destination device then determines if the NEXT function 820 has been selected [step 1910] indicating that the device user desires to select another device to receive the forwarded message. If so, the destination device continues processing at step 1850 (FIG. 18). If not, then the destination device determines if the SEND function 815 has been selected [step 1915]. If the SEND function 815 has been selected, the destination device queues the outgoing message for subsequent delivery [step 1920] (see "Message Sending Processing" of

Returning to the example, Jim, after listening to the message from Sally, elects to delete the message or forwarding memory, instead of replying to the message or forwarding the message, and therefore selects the DISCARD function 830.

EXEMPLARY PROCESSING FOR RE-INITIALIZATION

FIGS. 20–21 are flowcharts of system processing, consistent with the present invention, for re-initializing device 300. A user of device 300 may wish to re-initialize device 300 by removing MY_UNIQUE_ID 405 and all received messages (RECEIVED_MSG_#1 605 through RECEIVED_MSG_#N 610) that have been stored in database 400. To re-initialize, device 300 determines if the MSG function 835 has been selected by the device user [step 2005] (FIG. 20). If so, device 300 determines if the DISCARD button 830 has further been selected [step 2010] indicating that the user desires to delete a received message from memory. If the DISCARD button 830 has been selected, device 300 deletes a current received message (RECEIVED_MSG_#x) stored in database 400 [step 2015]. Device 300 then determines if the message just discarded is the last received message [step 2020]. If not, processing returns to step 2010.

In the example, Jim may partially re-initialize his device by first selecting the MSG function 840 and then repeatedly selecting the DISCARD function 830 until all of the received messages have been deleted from memory.

To re-initialize the device identifiers (FRIEND_ID_#1 505–FRIEND_ID_#N 510), device 300 determines if the user has selected the ID function 835 [step 2105] (FIG. 21). If so, device 300 next determines if the DISCARD button 830 has been selected, indicating that the device user desires to delete a device identifier from memory [step 2110]. If so, device 300 deletes a current FRIEND_ID_#x in list 415 [step 2115]. Device 300 concludes re-initialization processing when the most recently deleted identifier is the last identifier in list 415 [step 2120].

In the example, Jim may complete the re-initialization of his device by selecting the ID function 835 and then repeatedly selecting the DISCARD function 830 until all of the device identifiers have been deleted from memory.

CONCLUSION

Systems and methods consistent with the present invention provide mechanisms that improve the delivery of messages in wireless networks by permitting temporary storage of messages in a sending device followed by the transmission or re-transmission of the messages when the destination device(s) comes within the transmission range of the sending device.

12

The foregoing description of exemplary embodiments of the present invention provides illustration and description, but is not intended to be exhaustive or to limit the invention to the precise form disclosed. Modifications and variations are possible in light of the above teachings or may be acquired from practice of the invention. For example, while a series of steps have been presented with regard to the processing of FIGS. 10–21, the order of the steps does not matter.

In addition, while communication between wireless devices in the exemplary embodiments above has been disclosed as occurring directly across an air interface, communication between wireless devices may also occur across a cellular infrastructure and through a data network (e.g., the Internet). Such communication would allow messages to be stored on a data server connected to the data network. Storing the messages on a data server would permit wireless device users to archive voice recordings and mail recordings to other wireless devices. This would further advantageously permit wireless devices to exchange messages with other wireless devices anywhere in the world across the data network.

Furthermore, though the exemplary processing described above uses audio data as unique identifiers for each device, one skilled in the art will appreciate that the unique identifiers can include digital video or digital pictorial data. For example, a digital "stylus and tablet" can be associated with transceiver and processing circuitry to permit entry of handwritten pictures (e.g., signatures) for transmission as a MY_UNIQUE_ID device identifier. As another example, a digital camera can be associated with transceiver and processing circuitry to permit the entry of digital pictures (e.g., portraits) for transmission as a MY_UNIQUE_ID device identifier. As an additional example, a digital camcorder can be associated with transceiver and processing circuitry to permit the entry of digital video (e.g., video of the device user) for transmission as a MY_UNIQUE_ID device identifier. The transceiver and processing circuitry may be contained integrally within the digital "stylus and tablet," digital camera, or digital camcorder. The digital "stylus and tablet," camera, and camcorder can also be separate devices interconnected with device 300 so as to permit device 300 to download pictorial or video data.

The exemplary processing described above can be adapted to permit the entry and use of digital video or pictorial data, instead of audio data, for identifying devices. For example, when selecting a destination device for sending a message, a device user could scroll through digital pictures corresponding to other "friend" devices, instead of listening to audio identifiers, to select a message destination. As another example, the exemplary "initialization" processing, described above with respect to FIG. 10, can be adapted to permit the entry and storage of video or pictorial data from MY_UNIQUE_ID instead of recording a verbal phrase. Additionally, audio identifiers MY_UNIQUE_AUDIO and video/pictorial identifiers MY_UNIQUE_ID_PIC can be used together for identifying a device. For example, when selecting a device as a destination for a message, a device user can scroll through digital pictures corresponding to other "friend" devices and hear the audio identifier associated with each visual picture.

The scope of the invention is defined by the following claims and their equivalents.

What is claimed is:

1. A method for introducing a first communication device to a second communication device in a communication network comprising:

US 6,665,722 B1

13

transmitting a message from the first communication device, said message comprising presentation data that further comprises at least one of audio, pictorial and video data representing an identity of the first communication device;

receiving said message at the second communication device;

extracting the presentation data from the message;

presenting the presentation data to a user of the second communication device in auditory or visual form;

receiving user input in response to said presentation; and

storing said presentation data, as an identifier for the first communication device, in a memory of the second communication device based on said user input.

2. The method of claim 1, further comprising:

deleting said message from said memory based on said user input.

3. A system for introducing a first communication device to a second communication device in a communication network comprising:

means for transmitting a message from the first communication device, said message comprising presentation data that further comprises at least one of audio, pictorial and video data representing an identity of the first communication device;

means for receiving said message at the second communication device;

means for extracting the presentation data from the message;

means for presenting the presentation data to a user of the second communication device in auditory or visual form;

means for receiving user input in response to said presentation; and

means for storing said presentation data, as an identifier for the first communication device, in a memory of the second communication device based on said user input.

4. A data structure encoded on a computer readable medium, comprising:

first identifier data indicating a global identification of a first communication device; and

second identifier data comprising presentation data, said presentation data further comprising at least one of audio, pictorial and video data representing an identity of the first communication device.

5. The data structure of claim 4, further comprising:

third identifier data indicating a global identification of a second communication device; and

fourth identifier data comprising presentation data, said presentation data further comprising at least one of audio, pictorial and video data representing an identity of the second communication device.

6. The data structure of claim 5, further comprising:

message data comprising a message from first communication device to said second communication device.

7. A method of providing an identifier for a communication device, comprising:

inputting at least one of auditory, pictorial and video information into the communication device;

converting said at least one of auditory, pictorial, and video information into device identifier data; and

storing said device identifier data in a memory of said communication device.

14

8. The method of claim 7, wherein said auditory information is a verbal phrase spoken by a device user.

9. The method of claim 7, wherein said pictorial information comprises a digital representation of a device user's handwriting.

10. The method of claim 7, wherein said pictorial information comprises a digital portrait of a device user.

11. The method of claim 7, wherein said video information comprises video of a device user.

12. A computer-readable medium containing instructions for controlling at least one processor to perform a method of providing an identifier for a communication device, the method comprising:

inputting at least one of auditory, pictorial and video information into the communication device;

converting said at least one of auditory, pictorial and video information into device identifier data; and

storing said device identifier data in a memory of said communication device.

13. The computer-readable medium of claim 12, wherein said auditory information is a verbal phrase spoken by a device user.

14. The computer-readable medium of claim 12, wherein said pictorial information comprises a digital representation of a device user's handwriting.

15. The computer-readable medium of claim 12, wherein said pictorial information comprises a digital portrait of a device user.

16. The computer-readable medium of claim 12, wherein said video information comprises video of a device user.

17. A communication device comprising:

a memory;

an input device configured to receive at least one of auditory, pictorial and video information; and

a processor configured to:

convert said at least one of auditory, pictorial and video information into device identifier data, and

store said device identifier data in the memory.

18. The communication device of claim 17, wherein said auditory information is a verbal phrase spoken by a device user.

19. The communication device of claim 17, wherein said pictorial information comprises a digital representation of a device user's handwriting.

20. The communication device of claim 17, wherein said pictorial information comprises a digital portrait of a device user.

21. The communication device of claim 17, wherein said video information comprises video of a device user.

22. A method of sending a message to one or more recipients in a communications network, comprising:

retrieving device identifiers from a list of device identifiers stored in a memory of a first communication device, said device identifiers comprising at least one of audio, pictorial and video data;

presenting the at least one of audio, pictorial and video data to a user of the first communication device in auditory or visual form;

receiving user input in response to said presentation;

designating a second communication device as a destination for the message based on said user input; and

sending the message to the second communication device.

23. The method of claim 22, further comprising:

designating other communication devices as destinations for the message based on said user input.

US 6,665,722 B1

15

24. A computer-readable medium containing instructions for controlling at least one processor to perform a method of sending a message to one or more recipients in a communications network, the method comprising:

retrieving device identifiers from a list of device identifiers stored in a memory of a first communication device, said device identifiers comprising at least one of audio, pictorial and video data;

presenting the at least one of audio, pictorial and video data to a user of the first communication device in auditory or visual,

receiving user input in response to said presentation,

designating a second communication device as a destination for the message based on said user input, and

sending the message to the second communication device.

25. The computer-readable medium of claim 24, the method further comprising:

designating other communication devices as destinations for the message based on said user input.

26. A first communication device comprising:

a memory configured to store a list of identifiers; and

a processor configured to:

retrieve device identifiers from the list of device identifiers stored in the memory, said device identifier comprising at least one of audio, pictorial and video data,

present the at least one of audio, pictorial and video data to a user of the first communication device in auditory or visual form,

receive user input in response to said presentation,

designate a second communication device as a destination for the message based on said user input, and

send the message to the second communication device.

27. The first communication device of claim 26, the processor further configured to:

designate other communication devices as destinations for the message based on said user input.

28. A method of authorizing transmission of a message from a first communication device to a second communication device in a communications network, comprising:

receiving a request to send a message from the first communication device, said request containing a device identifier identifying the first communication device; and

sending an authorization message to said first communication device authorizing said first communication device to send said message if said device identifier matches any identifiers from a list of identifiers stored in a memory in said second communication device.

29. A computer-readable medium containing instructions for controlling at least one processor to perform a method of authorizing transmission of a message from a first communication device to a second communication device in a communications network, the method comprising:

receiving a request to send a message from the first communication device, said request containing a device identifier identifying the first communication device; and

sending an authorization message to said first communication device authorizing said first communication device to send said message if said device identifier matches any identifiers from a list of identifiers stored in a memory of said second communication device.

30. A first communication device, comprising:

a processor configured to:

16

receive a request to send a message from a second communication device, said request containing a device identifier identifying the second communication device; and

send an authorization message to said second communication device authorizing said second communication device to send said message if said device identifier matches any identifiers from a list of identifiers stored in a memory of said first communication device.

31. A method of forwarding a message received at a first communication device in a communications network, comprising:

receiving a message at the first communication device;

retrieving device identifiers from a list of device identifiers stored in a memory of the first communication device, said device identifier comprising at least one of audio, pictorial and video data;

presenting the at least one of audio, pictorial and video data to a user of the first communication device in auditory or visual form;

receiving user input in response to said presentation;

designating a second communication device as a forwarding destination for the message based on said user input; and

forwarding the message to the second communication device.

32. The method of claim 31, wherein said auditory information is a verbal phrase spoken by a device user.

33. The method of claim 31, wherein said pictorial information comprises a digital representation of a device user's handwriting.

34. The method of claim 31, wherein said pictorial information comprises a digital portrait of a device user.

35. The method of claim 31, wherein said video information comprises video of a device user.

36. A computer-readable medium containing instructions for controlling at least one processor to perform a method of forwarding a message received at a first communication device in a communications network, the method comprising:

receiving a message at the first communication device;

retrieving device identifiers from a list of device identifiers stored in a memory of the first communication device, said device identifier comprising at least one of audio, pictorial and video data;

presenting the at least one of audio, pictorial data and video to a user of the first communication device in auditory or visual form;

receiving user input in response to said presentation; and

designating a second communication device as a forwarding destination for the message based on said user input.

37. The computer-readable medium of claim 36, wherein said auditory information is a verbal phrase spoken by a device user.

38. The computer-readable medium of claim 36, wherein said pictorial information comprises a digital representation of a device user's handwriting.

39. The computer-readable medium of claim 36, wherein said pictorial information comprises a digital portrait of a device user.

40. The computer-readable medium of claim 36, wherein said video information comprises video of a device user.

US 6,665,722 B1

17

41. A communication device comprising:

an input device;

a memory configured to store device a list of device identifiers; and

a processor configured to:

receive a message at the first communication device,

retrieve device identifiers from the list of device identifiers stored in the memory, said device identifiers comprising at least one of audio, pictorial and video data,

present the audio, pictorial and video data to a user of the first communication device in auditory or visual form,

receive user input in response to said presentation via the input device, and

designate a second communication device as a forwarding destination for the message based on said user input.

42. The communication device of claim 41, wherein said auditory information is a verbal phrase spoken by a device user.

43. The communication device of claim 41, wherein said pictorial information comprises a digital representation of a device user's handwriting.

44. The communication device of claim 41, wherein said pictorial information comprises a digital portrait of a device user.

45. The communication device of claim 41, wherein said video information comprises video of a device user.

46. A method of transmitting a message from a first communication device to one or more recipients in a communications network, comprising:

retrieving device identifiers from a list of device identifiers stored in a memory of the first communication device, said device identifiers comprising at least one of audio, pictorial and video data;

presenting the at least one of audio, pictorial and video data to a user of the first communication device in auditory or visual form;

receiving user input in response to said presentation;

designating a second communication device as a forwarding destination for the message based on said user input;

queuing said message in the memory of said first communication device;

transmitting a request to send a message to the second communication device, said request containing a device identifier identifying the first communication device;

18

receiving an authorization message from said second communication device authorizing said first communication device to send said message;

retrieving said queued message from the memory of said first communication device; and

transmitting said message to said second communication device.

47. The method of claim 46, further comprising:

designating one or more other communication devices as destinations for the message based on said user input;

transmitting requests to send said message to the one or more other communication devices, said requests containing a device identifier identifying the first communication device;

receiving authorization messages from said one or more other communication devices authorizing said first communication device to send said message;

retrieving said queued message from the memory of said first communication device; and

transmitting said message to said one or more other communication devices.

48. A communication network, comprising:

at least one first communication device configured to:

transmit at least one authorization message in response to receiving a request to send a message; and

a second communication device configured to:

retrieve device identifiers from a list of device identifiers stored in a memory, said device identifiers comprising at least one of audio, pictorial and video data,

present the at least one of audio, pictorial and video data to a user of the second communication device in auditory or visual form,

receive user input in response to said presentation,

designate said at least one first communication device as a forwarding destination for the message based on said user input,

queue said message in the memory,

transmit said request to send a message to the at least one first communication device, said request containing a device identifier identifying the at least one first communication device,

receive said at least one authorization message from said at least one first communication device authorizing said second communication device to send said message,

retrieve said queued message from the memory, and

transmit said message to said second communication device.

* * * * *

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

### TYLER DIVISION

| | | |
|---|---|---|
| STRAGENT, LLC, *et al.,* | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 6:10-CV-226-LED |
| | § | |
| v. | § | |
| | § | |
| MATCH.COM, LLC, *et al.,* | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which Plaintiffs Stragent, LLC ("Stragent") and SeeSaw Foundation ("SeeSaw") complain against Defendants Match.com, LLC ("Match"); eHarmony, Inc. ("eHarmony"); Skype, Inc. and Skype Technologies S.A. (collectively "Skype"); CBS Corporation (aka Delaware CBS Corporation) ("CBS"); ESPN, Inc., and ESPN/Starwave Partners (dba ESPN Internet Ventures) (collectively "ESPN"); FOX Broadcasting Company, Inc. and Fox Entertainment Group, Inc. (collectively "FOX"); Friendster, Inc. ("Friendster"); and LinkedIn Corporation ("LinkedIn"), as follows:

### PARTIES

1.      Plaintiff Stragent is a Texas limited liability company having its principal place of business in Longview, Texas.

2.      Plaintiff SeeSaw is a Texas non-profit corporation intended to qualify as an entity exempt from income tax as an organization described in Internal Revenue Code section 501(c)(3) and as a supporting organization described in Internal Revenue Code section 509(a)(3)(B)(i) (a "Type 1 Supporting Organization") to SeeSaw Children's Place, a Texas non-

profit corporation exempt from income tax under section 501(c)(3) of the Internal Revenue Code, having its principal place of business in Longview, Texas.

3.      On information and belief, Defendant Match is a Delaware limited liability company having its principal place of business in Dallas, Texas.

4.      On information and belief, Defendant eHarmony is a Delaware corporation having its principal place of business in Pasadena, California.

5.      On information and belief, Defendant Skype, Inc. is a Delaware corporation having its principal place of business in San Jose, California.

6.      On information and belief, Defendant Skype Technologies S.A. is a Luxembourg corporation having its principal place of business in Luxembourg, Luxembourg.

7.      On information and belief, Defendant CBS is a Delaware corporation having its principal place of business in New York, New York.

8.      On information and belief, Defendant ESPN, Inc. is a Delaware corporation having its principal place of business in New York, New York.

9.      On information and belief, Defendant ESPN/Starwave Partners (dba ESPN Internet Ventures) is a New York general partnership having its principal place of business in New York, New York.

10.     On information and belief, Defendant FOX Broadcasting Company, Inc. is a Delaware corporation having its principal place of business in Los Angeles, California.

11.     On information and belief, Defendant Fox Entertainment Group, Inc. is a Delaware corporation having its principal place of business in Los Angeles, California.

12.     On information and belief, Defendant FOX Broadcasting Company, Inc. is a subsidiary of Defendant Fox Entertainment Group, Inc.

2

13.     On information and belief, Defendant Friendster is a Delaware corporation having its principal place of business in Mountain View, California.

14.     On information and belief, Defendant LinkedIn is a Delaware corporation having its principal place of business in Mountain View, California.

## JURISDICTION AND VENUE

15.     This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16.     Venue is proper in this district under 28 U.S.C. §§ 1391(c) and 1400(b). On information and belief, each Defendant has transacted business in this district and has committed and/or contributed to acts of patent infringement in this district.

17.     On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

## INFRINGEMENT OF U.S. PATENT NO. 6,665,722

18.     Plaintiff SeeSaw is the owner by assignment of United States Patent No. 6,665,722 ("the '722 patent") entitled "Store-and-forward packet radio system and method." The '722 patent was duly and legally issued on December 16, 2003. A true and correct copy of the '722 patent is attached as Exhibit A.

3

19.     Plaintiff Stragent is the exclusive licensee of the '722 patent, having an exclusive, worldwide, transferable, retroactive and prospective license ("the License") under the '722 patent, with the right to sublicense others, to (i) make, have made, use, sell, offer to sell, import and lease any products, (ii) use and perform any method, process, and/or services, and (iii) otherwise practice any invention in any manner, such that Stragent has full right to enforce and/or sublicense the '722 patent without any restriction, subject to certain encumbrances. Stragent further has the exclusive right under the License to maintain, enforce, or defend the '722 patent, including without limitation pursuing and collecting damages, royalties, and other payments and obtaining injunctive relief and other remedies for past, current and future infringement of the '722 patent and pursuing and entering into any settlement related to a claim of infringement.

20.     On information and belief, Defendant Match has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial district, and elsewhere in the United States.  Match's direct infringements include, without limitation, making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation the Chemistry.com and Match.com Internet websites, that infringe one or more claims of the '722 patent.  Match is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

21.     On information and belief, Defendant Match has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end users of communication systems, including without limitation the Chemistry.com and Match.com Internet websites, that infringe one or more claims of the '722 patent.  Match is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

4

22.     On information and belief, Defendant eHarmony has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial district, and elsewhere in the United States.  eHarmony's direct infringements include, without limitation, making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation the eHarmony.com Internet website, that infringe one or more claims of the '722 patent.  eHarmony is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

23.     On information and belief, Defendant eHarmony has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end users of communication systems, including without limitation the eHarmony.com Internet website, that infringe one or more claims of the '722 patent.  eHarmony is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

24.     On information and belief, Defendant Skype has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial district, and elsewhere in the United States.  Skype's direct infringements include, without limitation, making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation the Skype software program, that infringe one or more claims of the '722 patent.  Skype is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

25.     On information and belief, Defendant Skype has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end users of communication systems, including without limitation the Skype software program, that

5

infringe one or more claims of the '722 patent.  Skype is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

26.     On information and belief, Defendant CBS has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial district, and elsewhere in the United States.  CBS's direct infringements include, without limitation, making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation the CBS.com Internet website, that infringe one or more claims of the '722 patent.  CBS is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

27.     On information and belief, Defendant CBS has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end users of communication systems, including without limitation the CBS.com Internet website, that infringe one or more claims of the '722 patent.  CBS is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

28.     On information and belief, Defendant ESPN has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial district, and elsewhere in the United States.  ESPN's direct infringements include, without limitation, making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation the ESPN.com Internet website, that infringe one or more claims of the '722 patent.  ESPN is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

29.     On information and belief, Defendant ESPN has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end

6

users of communication systems, including without limitation the ESPN.com Internet website, that infringe one or more claims of the '722 patent. ESPN is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

30. On information and belief, Defendant FOX has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial district, and elsewhere in the United States. FOX's direct infringements include, without limitation, making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation the FOX.com Internet website, that infringe one or more claims of the '722 patent. FOX is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

31. On information and belief, Defendant FOX has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end users of communication systems, including without limitation the FOX.com Internet website, that infringe one or more claims of the '722 patent. FOX is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

32. On information and belief, Defendant Friendster has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial district, and elsewhere in the United States. Friendster's direct infringements include, without limitation, making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation the Friendster.com Internet website, that infringe one or more claims of the '722 patent. Friendster is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

33.     On information and belief, Defendant Friendster has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end users of communication systems, including without limitation the Friendster.com Internet website, that infringe one or more claims of the '722 patent.  Friendster is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

34.     On information and belief, Defendant LinkedIn has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial district, and elsewhere in the United States.  LinkedIn's direct infringements include, without limitation, making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation the LinkedIn.com Internet website, that infringe one or more claims of the '722 patent.  LinkedIn is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

35.     On information and belief, Defendant LinkedIn has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end users of communication systems, including without limitation the LinkedIn.com Internet website, that infringe one or more claims of the '722 patent.  LinkedIn is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

36.     As a result of Defendants' infringement of the '722 patent, Stragent and SeeSaw have suffered monetary damages that are adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Stragent and SeeSaw request that this Court enter:

8

A.     A judgment in favor of Stragent and SeeSaw that Defendants have directly infringed the '722 patent;

B.     A judgment in favor of Stragent and SeeSaw that Defendants have contributed to others' infringement of the '722 patent;

C.     A judgment and order requiring Defendants to pay Stragent and SeeSaw their damages, costs, expenses, prejudgment and post-judgment interest, and post-judgment royalties for Defendants' infringement of the '722 patent as provided under 35 U.S.C. § 284; and

D.     Any and all other relief to which the Court may deem Stragent and SeeSaw entitled.

## DEMAND FOR JURY TRIAL

Stragent and SeeSaw, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

Respectfully submitted,

Eric M. Albritton
Texas Bar No. 00790215
ema@emafirm.com
Adam A. Biggs
Texas Bar No. 24051753
aab@emafirm.com
Debra Coleman
Texas Bar No. 24059595
drc@emafirm.com
Matthew C. Harris
Texas Bar No. 24059904
mch@emafirm.com
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone: (903) 757-8449
Facsimile: (903) 758-7397

T. John Ward, Jr.
State Bar No. 00794818
jw@jwfirm.com
WARD & SMITH LAW FIRM
P.O. Box 1231
Longview, Texas 75606-1231
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

Danny L. Williams
Texas Bar No. 21518050
danny@wmalaw.com
J. Mike Amerson
Texas Bar No. 01150025
mike@wmalaw.com
Jaison C. John
Texas State Bar No. 24002351
jjohn@wmalaw.com
Christopher N. Cravey
Texas Bar No. 24034398
ccravey@wmalaw.com
Matthew R. Rodgers
Texas Bar No. 24041802
mrodgers@wmalaw.com
Michael A. Benefield
Indiana Bar No. 24560-49
mbenefield@wmalaw.com
David Morehan
Texas Bar No. 24065790
dmorehan@wmalaw.com
WILLIAMS, MORGAN & AMERSON, P.C.
10333 Richmond, Suite 1100
Houston, Texas 77042
Telephone: (713) 934-7000
Facsimile: (713) 934-7011

*Attorneys for Stragent, LLC, and SeeSaw Foundation*

10

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 4, a summons in this action will be submitted for ESPN/Starwave Partners (dba ESPN Internet Ventures) to be served with a copy of this Second Amended Complaint. Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 17th day of September 2010.

Eric M. Albritton

# Exhibit C

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

## TYLER DIVISION

| | | |
|---|---|---|
| STRAGENT, LLC and SEESAW FOUNDATION, | § § § | |
| Plaintiffs, | § § | Civil Action No. 6:10-CV-242-LED |
| v. | § § | JURY TRIAL DEMANDED |
| CLASSMATES ONLINE, INC., *et al.*, | § § | |
| Defendants. | § § | |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which Plaintiffs Stragent, LLC ("Stragent") and SeeSaw Foundation ("SeeSaw") complain against Defendants Classmates Online, Inc., Classmates Media Corporation, and United Online, Inc. (collectively "Classmates"); Gannett Co., Inc. ("Gannett"); MTV Networks, a division of Viacom International, Inc., and Viacom Inc. (collectively "MTV"); MyLife.com, Inc. ("MyLife"); MySpace, Inc. ("MySpace"); and Plaxo, Inc. ("Plaxo"), as follows:

## PARTIES

1.  Plaintiff Stragent is a Texas limited liability company having its principal place of business in Longview, Texas.

2.  Plaintiff SeeSaw is a Texas non-profit corporation intended to qualify as an entity exempt from income tax as an organization described in Internal Revenue Code section 501(c)(3) and as a supporting organization described in Internal Revenue Code section 509(a)(3)(B)(i) (a "Type 1 Supporting Organization") to SeeSaw Children's Place, a Texas non-

profit corporation exempt from income tax under section 501(c)(3) of the Internal Revenue Code, having its principal place of business in Longview, Texas.

3.    On information and belief, Defendant Classmates Online, Inc. is a Washington corporation having its principal place of business in Renton, Washington.

4.    On information and belief, Defendant Classmates Media Corporation is a Delaware corporation having its principal place of business in Seattle, Washington.

5.    On information and belief, Defendant United Online, Inc. is a Delaware corporation having its principal place of business in Woodland Hills, California.

6.    On information and belief, Defendant Classmates Online, Inc. is subsidiary of Defendant Classmates Media Corporation, which is a wholly owned subsidiary of Defendant United Online, Inc.

7.    On information and belief, Defendant Gannett is a Delaware corporation having its principal place of business in McLean, Virginia.

8.    On information and belief, Defendant MTV Networks is an unincorporated division of Viacom International, Inc., which is a Delaware corporation having its principal place of business in New York, New York.

9.    On information and belief, Defendant Viacom Inc. is a Delaware corporation having its principal place of business in New York, New York.

10.    On information and belief, Defendant MTV Networks is an unincorporated division of Viacom International, Inc., which is a subsidiary of Defendant Viacom Inc.

11.    On information and belief, Defendant MyLife is a Delaware corporation having its principal place of business in Santa Monica, California.

2

12.    On information and belief, Defendant MySpace is a Delaware corporation having its principal place of business in Los Angeles, California.

13.    On information and belief, Defendant Plaxo is a Delaware corporation having its principal place of business in Mountain View, California.

## JURISDICTION AND VENUE

14.    This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

15.    Venue is proper in this district under 28 U.S.C. §§ 1391(c) and 1400(b).  On information and belief, each Defendant has transacted business in this district and has committed and/or contributed to acts of patent infringement in this district.

16.    On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

## INFRINGEMENT OF U.S. PATENT NO. 6,665,722

17.    Plaintiff SeeSaw is the owner by assignment of United States Patent No. 6,665,722 ("the '722 patent") entitled "Store-and-forward packet radio system and method." The '722 patent was duly and legally issued on December 16, 2003.  A true and correct copy of the '722 patent is attached as Exhibit A.

18.    Plaintiff Stragent is the exclusive licensee of the '722 patent, having an exclusive, worldwide, transferable, retroactive and prospective license ("the License") under the '722

3

patent, with the right to sublicense others, to (i) make, have made, use, sell, offer to sell, import and lease any products, (ii) use and perform any method, process, and/or services, and (iii) otherwise practice any invention in any manner, such that Stragent has full right to enforce and/or sublicense the '722 patent without any restriction, subject to certain encumbrances. Stragent further has the exclusive right under the License to maintain, enforce, or defend the '722 patent, including without limitation pursuing and collecting damages, royalties, and other payments and obtaining injunctive relief and other remedies for past, current and future infringement of the '722 patent and pursuing and entering into any settlement related to a claim of infringement.

19.     On information and belief, Defendant Classmates has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial district, and elsewhere in the United States.  Classmates's direct infringements include, without limitation, making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation the Classmates.com Internet website, that infringe one or more claims of the '722 patent. Classmates is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

20.     On information and belief, Defendant Classmates has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end users of communication systems, including without limitation the Classmates.com Internet website, that infringe one or more claims of the '722 patent.  Classmates is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

21.     On information and belief, Defendant Gannett has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial

district, and elsewhere in the United States.  Gannett's direct infringements include, without limitation, making, using, offering for sale and/or selling in the United States, and/or importing into the United States, communication systems, including without limitation the USAToday.com Internet website, that infringe one or more claims of the '722 patent.  Gannett is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

22.     On information and belief, Defendant Gannett has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end users of communication systems, including without limitation the USAToday.com Internet website, that infringe one or more claims of the '722 patent.  Gannett is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

23.     On information and belief, Defendant MTV has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial district, and elsewhere in the United States.  MTV's direct infringements include, without limitation, making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation the MTV.com and VH1.com Internet websites, that infringe one or more claims of the '722 patent.  MTV is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

24.     On information and belief, Defendant MTV has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end users of communication systems, including without limitation the MTV.com and VH1.com Internet websites, that infringe one or more claims of the '722 patent.  MTV is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

25.     On information and belief, Defendant MyLife has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial district, and elsewhere in the United States.   MyLife's direct infringements include, without limitation, making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation the Reunion.com Internet website, that infringe one or more claims of the '722 patent.   MyLife is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

26.     On information and belief, Defendant MyLife has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end users of communication systems, including without limitation the Reunion.com Internet website, that infringe one or more claims of the '722 patent.   MyLife is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

27.     On information and belief, Defendant MySpace has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial district, and elsewhere in the United States.   MySpace's direct infringements include, without limitation, making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation the MySpace.com Internet website, that infringe one or more claims of the '722 patent.   MySpace is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

28.     On information and belief, Defendant MySpace has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end users of communication systems, including without limitation the MySpace.com Internet

6

website, that infringe one or more claims of the '722 patent. MySpace is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

29.     On information and belief, Defendant Plaxo has been and now is, directly or through intermediaries, directly infringing the '722 patent in the State of Texas, in this judicial district, and elsewhere in the United States. Plaxo's direct infringements include, without limitation, making, using, offering for sale and/or selling within the United States, and/or importing into the United States, communication systems, including without limitation the Plaxo.com Internet website, that infringe one or more claims of the '722 patent. Plaxo is thus liable for infringement of the '722 patent pursuant to 35 U.S.C. § 271.

30.     On information and belief, Defendant Plaxo has been and now is, directly or through intermediaries, contributing to infringement of the '722 patent by, for example, end users of communication systems, including without limitation the Plaxo.com Internet website, that infringe one or more claims of the '722 patent. Plaxo is thus liable for further infringement of the '722 patent pursuant to 35 U.S.C. § 271.

31.     As a result of Defendants' infringement of the '722 patent, Stragent and SeeSaw have suffered monetary damages that are adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Stragent and SeeSaw request that this Court enter:

A.     A judgment in favor of Stragent and SeeSaw that Defendants have directly infringed the '722 patent;

B.     A judgment in favor of Stragent and SeeSaw that Defendants have contributed to others' infringement of the '722 patent;

C.    A judgment and order requiring Defendants to pay Stragent and SeeSaw their damages, costs, expenses, prejudgment and post-judgment interest, and post-judgment royalties for Defendants' infringement of the '722 patent as provided under 35 U.S.C. § 284; and

D.    Any and all other relief to which the Court may deem Stragent and SeeSaw entitled.

## DEMAND FOR JURY TRIAL

Stragent and SeeSaw, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

Respectfully submitted,

*Eric M. Albritton*

Eric M. Albritton
Texas Bar No. 00790215
ema@emafirm.com
Adam A. Biggs
Texas Bar No. 24051753
aab@emafirm.com
Debra Coleman
Texas Bar No. 24059595
drc@emafirm.com
Matthew C. Harris
Texas Bar No. 24059904
mch@emafirm.com
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone: (903) 757-8449
Facsimile: (903) 758-7397


T. John Ward, Jr.
State Bar No. 00794818
jw@jwfirm.com
WARD & SMITH LAW FIRM
P.O. Box 1231
Longview, Texas 75606-1231
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

Danny L. Williams
Texas Bar No. 21518050
danny@wmalaw.com
J. Mike Amerson
mike@wmalaw.com
Texas Bar No. 01150025
Jaison C. John
Texas State Bar No. 24002351
jjohn@wmalaw.com
Christopher N. Cravey
Texas Bar No. 24034398
ccravey@wmalaw.com
Matthew R. Rodgers
Texas Bar No. 24041802
mrodgers@wmalaw.com
Michael A. Benefield
Indiana Bar No. 24560-49
mbenefield@wmalaw.com
David Morehan
Texas Bar No. 24065790
dmorehan@wmalaw.com
WILLIAMS, MORGAN & AMERSON, P.C.
10333 Richmond, Suite 1100
Houston, Texas 77042
Telephone: (713) 934-7000
Facsimile: (713) 934-7011

*Attorneys for Stragent, LLC and*
*SeeSaw Foundation*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 17th day of September 2010.

Eric M. Albritton

From:     cacd_ecfmail@cacd.uscourts.gov
Subject:  **Activity in Case 2:10-cv-08925-RGK -SH Demand Media, Inc. v. Stragent, LLC et al Complaint - (Discovery)**
Date:     November 19, 2010 6:02:26 PM PST
To:       ecfnef@cacd.uscourts.gov

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered on 11/19/2010 at 6:02 PM PST and filed on 11/19/2010
**Case Name:**       Demand Media, Inc. v. Stragent, LLC et al
**Case Number:**     2:10-cv-08925-RGK -SH
**Filer:**           Demand Media, Inc.
**Document Number:** 1(No document attached)

**Docket Text:**
COMPLAINT against Defendants SeeSaw Foundation, Stragent, LLC. Case assigned to Judge R. Gary Klausner for all further proceedings. Discovery referred to Magistrate Judge Stephen J. Hillman. (Filing fee $ 350 PAID.) Jury Demanded., filed by Plaintiff Demand Media, Inc. (et)

**2:10-cv-08925-RGK -SH Notice has been electronically mailed to:**

Andrew David Weiss     aweiss@raklaw.com, tvogt@raklaw.com

Marc A Fenster     mfenster@raklaw.com, jflor@raklaw.com, nwilson@raklaw.com

**2:10-cv-08925-RGK -SH Notice has been delivered by First Class U. S. Mail or by fax to: :**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV10- 8925 RGK (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

RUSS, AUGUST & KABAT
Marc A. Fenster (SBN: 181067)
Andrew D. Weiss (SBN: 232974)
12424 Wilshire Blvd., 12th Floor
Los Angeles, CA 90025
(310) 826-7474

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| DEMAND MEDIA, INC., a Delaware corporation | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. | **CV 10  8925-R6K/SH** |
| STRAGENT, LLC, a Texas limited liability company; SEESAW FOUNDATION, a Texas non-profit corporation | **SUMMONS** |
| DEFENDANT(S). | |

TO:   DEFENDANT(S): STRAGENT, LLC and SEESAW FOUNDATION

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Marc A. Fenster_____, whose address is _Russ, August & Kabat, 12424 Wilshire Blvd, 12th Floor, Los Angeles, CA 90025____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __**19 NOV 2010**_____     By: _____
                                              Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                          **SUMMONS**

ORIGINAL

From:   cacd_ecfmail@cacd.uscourts.gov
Subject:   **Activity in Case 2:10-cv-08925-RGK -SH Demand Media, Inc. v. Stragent, LLC et al Summons Issued**
Date:   November 19, 2010 6:03:11 PM PST
To:   ecfnef@cacd.uscourts.gov

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered on 11/19/2010 at 6:03 PM PST and filed on 11/19/2010
**Case Name:**         Demand Media, Inc. v. Stragent, LLC et al
**Case Number:**     2:10-cv-08925-RGK -SH
**Filer:**
**Document Number:** No document attached

**Docket Text:**
**21 DAY Summons Issued re Complaint - (Discovery) [1] as to Defendants SeeSaw Foundation, Stragent, LLC. (et)**

**2:10-cv-08925-RGK -SH Notice has been electronically mailed to:**

Andrew David Weiss      aweiss@raklaw.com, tvogt@raklaw.com

Marc A Fenster      mfenster@raklaw.com, jflor@raklaw.com, nwilson@raklaw.com

**2:10-cv-08925-RGK -SH Notice has been delivered by First Class U. S. Mail or by fax to: :**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) <br> DEMAND MEDIA, INC. | DEFENDANTS <br> STRAGENT, LLC and SEESAW FOUNDATION |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br><br> Russ August & Kabat, 12424 Wilshire Blvd., 12th Floor, <br> Los Angeles, CA 90025 <br> (310) 826-7474 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ MONEY DEMANDED IN COMPLAINT: $ over $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

35 U.S.C. sections 271 and 280-285

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☒ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

## CV 10 8925

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)          CIVIL COVER SHEET          Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                    ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                    ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                    ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Texas |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Marc A. Fenster_     Date November 19, 2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |